## John E. Sparks et al. *v.* Steamer Saladin et al.

A flatboat was tied to the bank of the river, about 250 yards below the steamboat landing, and a steamboat, in attempting to land, in a dark foggy night, came into collision with her. *Held:* That the steamer was liable for the damages caused by the collision, and that, under the circumstances, she was not exempted from liability, because the flatboat had out no light.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *J. W. Frost*, for plaintiffs. *J. W. Price*, *L. Hunton* and *Garnet Duncan*, for defendants. The judgment of the court was pronounced by

SLIDELL, J. The district judge, in his opinion, says: "It is clear that the collision was owing to a want of care and caution on the part of those who had the management of the steamer Saladin." We think this opinion is sustained by the evidence. The night was foggy, and it was imprudent to run the boat in such weather.

The plaintiffs' flatboat was fastened at the bank, at the usual place for mooring flatboats, at Natchez. The landing for steamboats was about two hundred and fifty yards below. The Saladin was working her engine, until she came within a short distance from the flatboat; and when the flatboat was seen, and the order given to back, it was too late. A collision ensued, by which the flatboat was sunk. It is said, there was negligence on the part of the plaintiffs in not having a light out, and some one on board to hail the steamer; by either of which precautions, it is contended, the disaster would have been prevented. But, it appears from the evidence, that it is not usual, at Natchez, for flatboats thus moored, to display a light and keep a man on the look-out; and we are not permitted to say, upon a review of the whole testimony, that the officers of the steamer had a right to expect any such warning or assistance, while propelling their boat in a dense fog, at the place in question.

Much stress was laid, by the counsel for the appellants, upon the opinion of the Supreme Court of Pennsylvania, in *Simpson* v. *Hand*, 6 Wharton, 325. Chief Justice Gibson, in that case, says, the hoisting of a light is a precaution so imperiously demanded by prudence, that I know not how the omission of it could be qualified by circumstances, any more than could the leaving of a crate of china

in the track of a railroad car; or how it could be considered otherwise than as negligence *per se.* The opinion is certainly entitled to great respect; but to appreciate its scope and meaning, it is necessary to look at the context and the facts before the court. The plaintiff's goods were laden in a vessel called the Thorn, which was lying at anchor, in the night, in the river Delaware. The William Henry, being under sail, came into collision with the Thorn, which sprung a leak from the concussion, and the plaintiff's goods were damaged by the water. He claimed compensation for this damage, from the owners of the William Henry. From the report of that case, it appears that the Delaware is the only navigable communication between the city of Philadelphia, a place of great commerce, and the ocean. The channel is not wide. The Thorn was lying at anchor, in the middle of the channel. It was proved to be the custom of the river to set a light in nights of unusual darkness, and also for the crew of a vessel at anchor, in the stream, to give such a shear as may prevent a vessel in the act of passing her, from running foul, in case of accident. In view of such a state of facts, we find the Chief Justice closing his opinion with this remark: "The jury ought to have been told, that if she was moored in the channel, without a light burning at the time, or that if her watch was not present, and did not what is customary on such occasions, her people were obnoxious to such a charge of negligence as would bar the action." In another place, he observes, a vessel is not bound to show a light when she is moored out of harm's way.

The present case is a very different one. Here was a flatboat tied to the bank at a place appropriated to that sort of craft, at a considerable distance from the landing appropriated to steamboats; there was no want of conformity to custom, whereby a false confidence could be given to an approaching vessel; nor does there appear to have been any reason for the owner of the flatboat to expect that a steamboat would come to that part of the bank of the river.

Judgment affirmed, with costs.